UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NEXEN PETROLEUM U.S.A., INC.                    CIVIL ACTION
AND NEXEN OFFSHORE U.S.A., INC.

VERSUS                                          NO.  06-3043

SEA MAR DIVISION OF POOL                        SECTION "R" (4)
WELL SERVICES CO.

### ORDER AND REASONS

The plaintiffs have submitted two motions in limine. In their first motion, plaintiffs seek to exclude parol evidence related to the drafting and negotiation of the charter agreement between Nexen Petroleum and defendant Sea Mar. In their second, plaintiffs move to exclude evidence and argument about whether Global Santa Fe was Nexen Petroleum's invitee at the Aspen 5 site. Also before the Court are Sea Mar's four motions in limine. Sea Mar seeks to exclude evidence from the Coast Guard's marine casualty investigation, including the summary of the Coast Guard's administrative enforcement action taken against Robert Purce, the ship engineer. It also moves to exclude evidence of a settlement agreement between the Coast Guard and Mr. Purce along

with a signed statement given by Robert Purce to the Coast Guard.
In its two other motions, Sea Mar seeks to exclude evidence of
post-allision remedial measures, and hearsay evidence of Sea Mar
employees. For the following reasons, the Court GRANTS in part
and DENIES in part plaintiffs' motions and GRANTS in part and
DENIES in part defendant's motions.


**I.   Background**

    This case arises from the allision of a supply vessel with a
semi-submersible rig at an offshore drilling site. Plaintiff
Nexen Offshore holds a federal lease to explore and extract
hydrocarbons at a location offshore of Louisiana known as the
Aspen 5 site. Plaintiff Nexen Petroleum operates the lease on
behalf of its corporate affiliate and co-plaintiff, Nexen
Offshore. Nexen Petroleum contracted with several providers of
offshore drilling services to conduct operations at the Aspen 5
site. It hired Global Santa Fe to provide a semi-submersible rig
known as the *Arctic I* to drill the well hole, and it chartered
one of defendant Sea Mar's supply vessels, the *Cape Hope*, to
provide support services to the rig. On April 9, 2006, crew
members aboard the *Cape Hope* were transferring drilling muds to
the *Arctic I* via hoses between the vessel and the rig when

drilling mud began leaking onto the ship's deck. In an attempt to stop the leak, the chief engineer on duty, Robert Purce, activated the *Cape Hope*'s emergency shutdown switch, cutting fuel to the ship's engines. Without power, the vessel allided with, and caused damage to, the rig. Operations personnel then suspended drilling and temporarily plugged and abandoned (TP&A) the well hole by inserting two cement plugs. Tugs then towed the *Arctic I* to shore where it underwent repairs. The rig later returned to the Aspen 5 site, and after personnel removed the cement plugs, drilling operations resumed. The Coast Guard also investigated the circumstances of the allision.

## II.   DISCUSSION

### A.   Parol Evidence

Plaintiffs move to exclude any parol evidence regarding the drafting and negotiation of the charter agreement for the *Cape Hope*. Specifically, they seek to exclude any evidence related to the intended meaning of the terms "other subcontractors" and "customers" in the exculpatory provision of the charter. Plaintiffs argue that the terms of the charter are clear and unambiguous, and therefore, any presentation of parol evidence is improper. In response, Sea Mar argues that even if Global and

Nexen Offshore are not actually Nexen Petroleum's subcontractor and customer, respectively, it intended those terms in the exculpatory provision to apply to those entities in this situation, and thus a latent ambiguity exists, which justifies the admission of parol evidence. Plaintiffs counter this argument by arguing that any ambiguity must construed against the drafter of the contract, in this case Sea Mar.

Courts interpret maritime contracts, as they do other contracts, by looking first to the intent of the parties as expressed by the terms of the agreement. *See, e.g., Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (re-affirming that courts should look first to the expressed intent of the parties when interpreting indemnity clauses); *see also* 22 Williston on Contracts § 58:9 (4th ed.). Words should be given "their plain meaning unless the provision is ambiguous," *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984). A maritime contract "should be read as a whole, and a court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous." *Fontenot*, 791 F.2d at 1214. If the language of the contract is ambiguous, a court may consider extrinsic evidence to determine the intention of the parties at the time of

4

contract. *Atlantic Lines, Ltd. v. Narwhal, Ltd.*, 514 F.2d 726, 730 (5th Cir. 1975).

The Court finds that the terms of the charter are unambiguous. The relevant exculpatory provision states in full:

> 14. CHARTERER'S INDEMNITIES
> NEITHER OWNER [Sea Mar], ITS OFFICERS, DIRECTORS EMPLOYEES, THE VESSEL, HER OWNERS, OPERATORS, MASTER, AND CREW NOR THE UNDERWRITERS OF ANY OF THE FOREGOING SHALL HAVE ANY OF RESPONSIBILITY OR LIABILITY FOR ANY CLAIM INVOLVING DAMAGE TO OR LOSS OF ANY PROPERTY, DRILLING RIGS, VESSELS, CARGO, AND/OR EQUIPMENT OF CHARTERER [Nexen Petroleum], CHARTERER'S OTHER SUBCONTRACTORS, CHARTERER'S CUSTOMERS OR INVITEES OR FOR ANY INJURY, ILLNESS, DISEASE OR DEATH OF EMPLOYEES, AGENTS OR REPRESENTATIVES OF CHARTERER, CHARTERER'S OTHER SUBCONCTRACTORS, CHARTERER'S CUSTOMERS OR INVITEES AND CHARTERER SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS OWNER, ITS OFFICERS, DIRECTORS, EMPLOYEES, THE VESSEL, ITS OWNERS, OPERATORS, MASTER, AND CREW, AND THE UNDERWRITERS OF EACH OF THE FOREGOING FROM AND AGAINST ANY SUCH CLAIM, WHETHER GROUNDLESS OR NOT, AND WHETHER CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF INDEMNITEES, OR BY UNSEAWORTHINESS OF THE VESSEL OR EQUIPMENT OF OWNER, OWNER'S PROPERTY OR OWNER'S SUBCONTRACTORS' PROPERTY. IT IS EXPRESSLY UNDERSTOOD THAT CHARTERER SHALL INSURE ITS OBLIGATIONS ASSUMED UNDER THIS PARAGRAPH.

The terms "subcontractors" and "customers" have settled plain meanings. "A subonctractor is one who takes a portion of a contract from the principle contractor or another subcontractor." *Avondale Indus., Inc. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994). A customer, as Sea Mar pointed out in earlier briefings, is "one who regularly or repeatedly makes

purchases of, or has business dealings with another."[1] There is
nothing in the four corners of the charter that suggests the
parties intended these terms to have any other meanings. There
are no inconsistent or confusing uses of these terms elsewhere in
the document. That Sea Mar may have thought the contract
completely covered its liability is irrelevant to the meaning of
the terms. Also irrelevant is the Court's earlier observation
that the term "other subcontractors" "arguably implies that the
parties to the charter agreement understood Sea Mar to be Nexen
Petroleum's subcontractor . . ., [which] suggests [Global] is in
fact a subcontractor."[2] Global's status does not depend on the
wording of the charter agreement between Nexen Petroleum and Sea
Mar. It turns on its agreement with, and the status of, Nexen
Petroleum. Had Sea Mar, as the drafter, intended for the
exculpatory provision to apply to additional entities, such as
Nexen Petroleum's affiliates or contractors, it easily could have
so specified. Accordingly, parol evidence concerning the
negotiation and drafting of the contract is excluded.

---

[1] *See* Def.'s Mem. Supp. Mot. Summ. Judgment, R. Doc. 85-2 at 9.
[2] *See* R. Doc. 52 at 19.

**B.    Sea Mar's Invitee Defense**

Defendant Sea Mar has submitted a revised trial memorandum
that highlights three issues to be resolved at trial that were
not individually notated in the pretrial order. Plaintiffs move
to exclude all arguments and evidence concerning one of these:
whether Global Santa Fe, the provider of the rig at the drill
site, was an invitee of Nexen Petroleum's, the operator of the
lease. Sea Mar argues that Global was Nexen Petroleum's invitee,
and thus the exculpatory provision concerning damage to Nexen
Petroleum's invitees applies. Plaintiffs have not raised any
objections to the other two issues.

Plaintiffs contend that Sea Mar did not raise this issue in
any prior pleadings or the pretrial order and that both the law
in the Fifth Circuit and the terms of the pretrial order preclude
this amendment. The Fifth Circuit has held that "'[i]f a claim or
issue is omitted from the [pretrial] order, it is waived.'"
*Valley Ranch Development Co. v. Federal Deposit Ins. Corp.*, 960
F.2d 550, 554 (5th Cir. 1992) (quoting *Flannery v. Carroll*, 676
F.2d 126, 129 (5th Cir. 1982)). The pretrial order further
provides that it shall not be amended except by consent of the
parties or an order of the Court to prevent manifest injustice.

7

The Court finds plaintiffs' motion is without merit. Although Sea Mar did not previously file any motions specifically on its invitee theory or raise it as an affirmative defense in its answer, it raised the indemnity defense in its answer and included in the pretrial order the full terms of the indemnity/exculpatory provision that refers to invitees. Further, it raised as a legal issue in the pretrial order whether plaintiffs' claims are "barred by the exculpatory and indemnity provisions of [the] Master Time Charter."[3] Additionally, the provision in issue is part of the charter agreement at controversy in this case. Sea Mar has represented to the Court that trial of this issues does not require any new discovery or the testimony of any new witnesses.[4] There is no indication that plaintiffs will suffer any prejudice if the invitee defense is raised at trial. The argument is essentially a legal issue as to whether Global satisfies the definition of an invitee based on the same facts about the relationships of the entities that are already going to be presented. Moreover, as this is a bench trial, the Court will give plaintiffs additional time to brief

_____

[3] *See* Pretrial Order, R. Doc. 123 at 23.

[4] *See* Def.'s Mem. Opp. Pls.' Motion in Limine to Exclude Evidence of Invitee, R. Doc. 122 at 3.

the merits of this issue before it reaches a decision.
Accordingly, plaintiffs' motion to exclude evidence and argument
on the issue of whether Global was an invitee is denied.

    **C.   Evidence of Marine Casualty Investigation**

    Also at issue is whether plaintiffs may admit into evidence
a United States Coast Guard document titled "Enforcement
Summary."[5] The enforcement summary memorializes the Coast Guard's
charge of negligence against Purce, his admission of fault, and
the eventual 30-day suspension of his engineer's license.

    Federal law prohibits the introduction of documents
generated in marine casualty investigations as evidence in civil
and trials. Under 46 U.S.C. § 6308(a),

> no part of a report of a marine casualty investigation
> conducted under section 6301 of this title, including
> findings of fact, opinions, recommendations, deliberations,
> or conclusions, shall be admissible as evidence or subject
> to discovery in any civil or administrative proceedings,
> other than an administrative proceeding initiated by the
> United States.

The explanation for this exclusionary rule is contained at 46
C.F.R. § 4.07-1(b): "The investigations of marine casualties and
accidents and the determinations made are for the purpose of
taking appropriate measures for promoting safety of life and
property at sea, and are not intended to fix civil or criminal

---

[5] *See* R. Doc. 114-2 at 2-4.

responsibility." Under 46 U.S.C. § 6301(2), the Secretary of
Homeland Security is authorized to promulgate regulations for
investigation of marine casualties to determine

> whether an act of misconduct, incompetence, negligence,
> unskillfulness, or willful violation of law committed by any
> individual licensed, certificated, or documented under part
> E of this subtitle has contributed to the cause of the
> casualty, or to a death involved in the casualty, so that
> appropriate remedial action under chapter 77 of this title
> may be taken.

Sanctions are provided in 46 U.S.C. § 7703, under which a
mariner's license may be revoked if that individual has failed to
comply with a "regulation intended to promote marine safety" or
"committed an act of misconduct or negligence."

Plaintiffs maintain that the exclusionary provision of 46
U.S.C. § 6308(a) does not apply to the enforcement summary at
issue. They contend that the document falls outside of the §
6308(a) exclusion because it "was issued pursuant to 46 U.S.C. §
7703, as the document unambiguously reflects."[6] The summary lists
"negligence" as the violation with which Purce was charged and
cites 46 C.F.R. § 5.29, which defines negligence, as the
operative law or regulation. It also lists 46 U.S.C. § 7703 as

---

[6] *See* Pls.' Mem. Opp. Def.'s Mot. Summ. Judgment, R. Doc 114 at
3.

the "statutory authority."[7] The summary also notes that Purce

"admitted that he was at fault."[8]

The Court rejects plaintiffs' reading of the statute.

Section 6308(a) provides that no part of a report of an

*investigation* conducted pursuant to 46 U.S.C. § 6301 shall be

admissible as evidence in any civil proceedings. Plaintiffs

attempt to argue that because the enforcement summary was

apparently issued under Chapter 77 it falls outside this

exclusion. But there is no indication that the list of parts of

an investigative report is exclusive. Indeed, the term

"including" suggests that it is only illustrative. Moreover, any

penalty or sanction imposed under Chapter 77 represents the

conclusion of an investigation conducted under 46 U.S.C. § 6301.

Therefore, it is a part of the investigative report. Equally

problematic for plaintiffs' position is the Coast Guard's

explanation that marine casualty investigations are "for the

purpose of taking appropriate measures for promoting safety . .

., and not intended to fix civil or criminal responsibility." The

summary necessarily reveals the findings of fact, opinions, and

conclusions of the investigation. Hand the Coast Guard not found

Purce negligent, it could not have suspended his license. Were

---

[7] "Enforcement Summary," R. Doc. 114-2 at 2, 3.

[8] *Id.* at 2.

the summaries of administrative penalties resulting from such investigations admissible, the exclusionary provision would be pointless. It would frustrate the stated purpose of the law to admit through a backdoor the very material the statute excludes. Accordingly, defendant's motion to exclude parts of the Coast Guard's report into the allision is granted, and the enforcement summary is excluded.

### D. Purce's Settlement Agreement and Statement Given to Coast Guard

Defendants also move to exclude evidence of a settlement agreement between Robert Purce and the Coast Guard, in which Purce provided a sworn statement about his involvement in activating the emergency switch. The Court excludes this evidence for the same reasons it excludes the enforcement summary: it constitutes part of the Coast Guard's marine casualty investigation. In their memorandum in opposition to Sea Mar's motion in limine on this material, plaintiffs acknowledge that these documents are "part of the record of the Coast Guard's enforcement action against" Purce.[9] Such evidence is inadmissible under 46 U.S.C. 6308(a). Accordingly Sea Mar's motion to exclude this evidence is granted.

---

[9] *See* Pls.' Mem. Opp. Def.'s Mot. in Limine to Exclude Purce-USCG Settlement Agreement, R. Doc. 130 at 6.

**E.   Evidence of Remedial Measures**

Sea Mar moves to exclude evidence of remedial measures related to its emergency procedures taken after the allision. Once again, Sea Mar does not specify what pieces of evidence it seeks to exclude. Plaintiffs state, however, that they plan to introduce evidence of signs installed on the emergency shutdown switch and the mud pump switch after the allision and a safety message issued to all Sea Mar crew members regarding the allision and the use of the emergency shutdown switches.

Rule 407 of the Federal Rules of Evidence governs the admissibility of evidence of remedial measures taken after an accident. The rule provides in relevant part:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measure is not admissible to prove negligence, culpable conduct, . . . or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The rule reflects "the social policy of encouraging people to take, or at least not discourage them from taking, steps in furtherance of added safety." Fed. R. Ev. 407, Advisory Committee Note.

Plaintiffs argue that they do not seek to admit evidence of remedial measures for purposes of proving negligence or culpability but rather to rebut Sea Mar's theory of causation. The Court rejects this argument. The plaintiffs are offering the disputed evidence to show Sea Mar's negligence and the need for a warning sign. This is not a case in which Sea Mar asserts that some other party caused the accident. Rather, Sea Mar has denied that it was negligent in the manner in which it maintained signage on the switch. Plaintiffs are offering the subsequent measures to show the opposite.

Plaintiffs also argue that the remedial measures taken by Sea Mar were involuntary and therefore outside the scope of Rule 407. It is true that Rule 407 does not cover actions required by a regulatory authority because the social policy that encourages voluntary corrections is not implicated. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978). But in this case, there is no indication that a regulatory authority required Sea Mar to take remedial measures, such that they were involuntary. The cases that plaintiffs cite are inapposite to this situation because each involved the admissibility of independent investigative report by a federal regulatory agency, *see In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 817 (9th Cir. 1989);

14

*Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322, 1331 (10th Cir. 1983), or a report that the agency required the defendant to prepare, *see Rozier*, 573 F.2d at 1343. Plaintiffs argue that Sea Mar posted new signs in order to comply with Coast Guard regulations. That may be so, but whether Sea Mar was in violation of such regulations at the time of the allision is contested. There is no indication that the Coast Guard directed Sea Mar to take the remedial measures at issue. Accordingly, evidence of remedial measures in not admissible under the involuntariness exception.

Finally, plaintiffs argue that evidence of remedial measures, particularly before-and-after photographs of the emergency switch, forms part of the basis of both parties' expert reports are therefore admissible under Rule 703 of the Federal Rules of Evidence. The Court reserves ruling on this issue until the experts testify.

**F.   Hearsay Testimony of Sea Mar Employees**

In its final motion in limine, Sea Mar seeks to exclude evidence of any statements made by any crew members, specifically those of Purce, the chief engineer, regarding the events giving rise to the litigation on the ground that such evidence is inadmissible hearsay under Federal Rule of Evidence 801. Sea Mar,

however, does not refer to any statements in particular. As plaintiffs correctly point out, statements of Sea Mar employees are admissible as admissions of party-opponents. If a "statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," then such a statement is admissible. Fed. R. Ev. 801(d)(2)(D). Plaintiffs indicate that they plan to introduce a written statement that Purce prepared at the direction of his supervisor after the allision and deposition testimony from other employees who confirmed that they were authorized by Sea Mar to speak. Accordingly, these statements fall within the party-opponent exception to the hearsay rule and are admissible.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiffs' motion to exclude parol evidence on the drafting and negotiation of the master time charter. The Court DENIES plaintiffs' motion to exclude evidence and argument on the invitee defense. The Court GRANTS defendant's motions to exclude the enforcement summary and Purce's settlement agreement and statement to the Coast Guard. The Court further GRANTS defendant's motion to

exclude evidence of remedial measures and statements of Sea Mar employees. The Court, however, DENIES defendant's motion to exclude hearsay testimony of Sea Mar employees.

New Orleans, Louisiana, this <u>26th</u> day of September 2007.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE